# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| FLYING DOG BREWERY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE NORTH CAROLINA ALCOHOLIC BEVERAGE CONTROL COMMISSION, ALEXANDER D. "ZANDER" GUY JR., NORMAN A. MITCHELL, SR., KAREN L. STOUT, TERRANCE L. MERRIWEATHER, <br><br> Defendants. | Case No. 5:21-cv-343 <br><br> **PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION** |

Plaintiff Flying Dog Brewery, LLC ("Flying Dog Brewery") hereby moves for the entry of a temporary restraining order against Defendants North Carolina Alcoholic Beverage Control Commission (the "ABC Commission"), Alexander D. "Zander" Guy Jr., Norman A. Mitchell Sr., Karen L. Stout, and Terrance L. Merriweather (collectively, "Defendants"). Defendants collectively prohibited Plaintiff Flying Dog Brewery from selling its Freezin' Season Winter Ale in the State of North Carolina because it found the label of the beer "in bad taste" in violation of Flying Dog Brewery's rights under the First Amendment to the United States Constitution. The temporary restraining order should order Defendants to permit Plaintiff to express itself on its labels in the manner that it chooses and to market, sell, and distribute its Freezin' Season Winter Ale in the State of North Carolina. The proposed temporary restraining order should be converted into a preliminary injunction for the pendency of the case until permanent injunctive relief can issue. Immediate injunctive relief is required because Plaintiff must have orders for its Freezin' Season Winter Ale within ten days so that it may commence production of the beer.

Defendants' rejection of Plaintiff's label is unconstitutional, as is the regulation that permits Defendants to reject any beer label on the mere basis of the patently unconstitutional standard that it fails to meet some unknowable standard of "taste." Plaintiff will be irreparably injured and is entitled to an injunction permitting it to market, sell, and distribute Freezin' Season until this case has concluded and permanent injunctive relief can issue.

This Motion is made pursuant to Rule 65 of the Federal Rules of Civil Procedure and is based upon the attached memorandum of points and authorities, the declaration of Jim Caruso, the papers and pleadings on file in this matter, and any oral argument permitted by this Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.0 INTRODUCTION

Plaintiff Flying Dog Brewery submitted its proposed label for its Freezin' Season Winter Ale to Defendants as a formality to get approval to market, sell, and distribute the beer in the State of North Carolina and to do so with a label that permitted it to express itself in the manner which it chooses, which is its right as an American company. The label featured the silhouette of a cartoon figure standing next to a campfire. Shortly after submitting its label to Defendants, they informed Flying Dog Brewery that the label was rejected. Without support or citation, Defendants informed Flying Dog Brewery that its label was "in bad taste" and "inappropriate." Given that the label was rejected, Plaintiff Flying Dog Brewery is unable to market, sell, and distribute Freezin' Season in North Carolina, and it is unable to engage in the right of free expression guaranteed to it by the First Amendment to the U.S. Constitution.

Defendants' decision and the regulation upon which their finding is based are unconstitutional and in violation of Flying Dog Brewery's First Amendment rights. Defendants were not constitutionally permitted to reject the label as "in bad taste" without running afoul of a "bedrock principle" of First Amendment jurisprudence: "**Speech may not be banned on the ground that it expresses ideas that offend**." *Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017) (emphasis added).

Defendants have deprived Plaintiff Flying Dog Brewery of its First Amendment rights. Plaintiff is almost certain to succeed on the merits, and any deprivation of a party's rights under the First Amendment constitutes irreparable injury. Plaintiff Flying Dog Brewery is entitled to an immediate temporary restraining order and to preliminary injunctive relief, permitting it to sell its Freezin' Season Winter Ale with its chosen label in this state until this case has concluded and permanent injunctive relief may issue.

**2.0 STATEMENT OF RELEVANT FACTS**

**2.1 Plaintiff Flying Dog Brewery, LLC**

Plaintiff Flying Dog Brewery is a Delaware limited liability company with its headquarters and principal place of business in Frederick, Maryland. (*See* Declaration of Jim Caruso ["Caruso Decl."], attached as **Exhibit 1**, at ¶ 4.) It creates, brews, and sells craft beers and is one of the top 50 craft breweries in the United States. (*See id.* at ¶ 5.) Annually, it ships over 1.3 million cases of beer worldwide to its network of wholesalers, who in turn distribute Flying Dog Brewery beers to its corporate customers in the retail, bar, and restaurant businesses. (*See id.* at ¶ 6.)

Flying Dog Brewery took its name from a painting of what appeared to be a flying dog hanging in a Pakistani hotel, at which brewery founder George Stranahan stayed after a Himalayan climbing expedition. (*See* Caruso Decl. at ¶ 7.) Appreciating the artwork's can-do spirit, Stranahan later adopted this mascot and moniker for his brewery because it represents the idea that "it is amazing what you can achieve if nobody tells you that you can't." (*See id.* at ¶ 8.)

Stranahan and Flying Dog Brewery were influenced by Stranahan's longtime friend and neighbor, the iconoclastic journalist and literary figure Hunter S. Thompson. (*See* Caruso Decl. at ¶ 9.) Flying Dog Brewery's identity, and that of its products, is inextricably imbued with and promotes the irreverent "Gonzo" spirit and outlook for which Thompson is noted. (*See id.* at ¶ 10.) Thompson often collaborated with the artist Ralph Steadman, most notably on their book "Fear and Loathing in Las Vegas," to which Steadman contributed illustration. (*See* Fear and Loathing in Las Vegas,[1] attached to the Declaration of Trey Rothell ("Rothell Decl.") (**Exhibit 2**) as *Exhibit A*.) Steadman is renowned for expressing social and political commentary through his art. Steadman has won numerous awards, including the Francis Williams Book Illustration Award for "Alice in Wonderland," the American Society of Illustrators' Certificate of Merit, the WH Smith Illustration Award for "I Leonardo," the Dutch Silver Paintbrush Award for "Inspector Mouse," the Italian Critica in Erba Prize for "That's My Dad," the BBC Design Award for postage stamps, the Black Humour Award in France, and several

---

[1] Available at: <perma.cc/EHX7-V4LM> (last accessed Aug. 24, 2021).

Designers and Art Directors Association Awards. *See* Fat City Gallery, "Ralph Steadman."[2] He was voted Illustrator of the Year by the American Institute of Graphic Arts in 1979. *See* Pennsylvania College of Art and Design, "Artist Spotlight: Ralph Steadman" (Apr. 6, 2015).[3] As well as writing and illustrating his own books and Thompson's, Steadman has worked with writers including Ted Hughes, Adrian Mitchell, and Brian Patten, and also illustrated editions of "Treasure Island," "Animal Farm," and "Fahrenheit 451." *See* Widewalls, "Ralph Steadman" (Jul. 1, 2016).[4] Steadman illustrated Will Self's column in the British Independent newspaper and also wrote for Kotori Magazine. *See* Ralph Steadman Classics, "About Ralph."[5] Steadman's work has appeared in the New York Times, the Daily Telegraph, Rolling Stone, Punch, and Private Eye. *Id.*

Thompson introduced Flying Dog Brewery to Steadman and, 25 years ago, Plaintiff began a partnership under which Steadman produces, under license, illustration for Flying Dog Brewery's corporate imaging. (*See* Caruso Decl. at ¶ 11.) Steadman's illustrations grace the labels of Flying Dog Brewery's beers and beer packaging and are also sold and otherwise distributed by Flying Dog Brewery on other merchandise, including posters and clothing. (*See id.* at ¶ 12.) Appreciation of art, both the art of beer-craft and the visual arts, lies at the core of Flying Dog Brewery's philosophy. (*See id.* at ¶ 13.) As Stranahan has noted, "Art is our first language and we like and agree with what Ralph Steadman chooses to say through his art on our labels; that this is a wonderful world on a wacky path." (*See* Flying Dog Beers Featured at the National Press Club,[6] attached to the Rothell Decl. as *Exhibit B*.) The dogs depicted on Flying Dog Brewery's labels "are a reflection of the people we strive to be, carefree and spontaneous, rough around the edges but with real charm." (*See* Caruso Decl. at ¶ 14.)

---

[2] Available at: <perma.cc/NNA2-S4V7> (last accessed Aug. 24, 2021).
[3] Available at: <perma.cc/F3PY-MY32> (last accessed Aug. 24, 2021).
[4] Available at: <perma.cc/GZ97-Q4PY> (last accessed Aug. 24, 2021).
[5] Available at: <perma.cc/4N8Q-U9MF> (last accessed Aug. 24, 2021).
[6] Available at: <perma.cc/ZNK4-HV8F> (last accessed Aug. 24, 2021).

Flying Dog Brewery's beers include Chesapeake Wheat American Wheat Ale, Vicious Hook Fruit Punch Sour, Raging Bitch Belgian IPA, Thunderpeel Hazy IPA, Snake Dog IPA, Gonzo Imperial Porter, Bloodline Blood Orange Ales, and Deep Fake, a non-alcoholic beer. (*See* Caruso Decl. at ¶ 15; Flying Dog Beers, <flyingdog.com/beers>, attached to the Rothell Decl. as *Exhibit C*.) One of Flying Dog Brewery's beers is a winter ale called Freezin' Season. (*See id.*; Caruso Decl. at ¶ 16.) The beer's label contains the silhouette of a cartoon figure standing next to a campfire, along with a narrative description, as depicted below:



(*Id.* at ¶ 17.)

### 2.2 Defendant ABC Commission's Tasks and Duties

In the State of North Carolina, the ABC Commission is tasked with providing uniform control over the sale, purchase, transportation, manufacture, consumption, and possession of all alcoholic beverages in the state. It is an independent state agency housed in the North Carolina Department of Public Safety with a direct report to the Governor's office. The members of the ABC Commission meet monthly to hear and take action on permit violations, requests for approval of new ABC store locations, and other matters within its regulatory authority.

North Carolina's ABC laws are found in Chapter 18B of the North Carolina General Statutes, and the ABC Commission's Rules are found in Title 14B, Chapter 15 of the North Carolina Administrative Code. The ABC Commission has the authority to regulate the advertising of alcoholic beverages, including the ability to "prohibit or regulate any advertising of alcoholic beverages which is contrary to the public interest." NCGS § 18B-105(b)(11). No one is permitted to advertise alcoholic beverages in the State of North Carolina without complying with the rules of the ABC Commission. *See* NCGS § 18B-105(a). There are administrative penalties for not complying with the ABC Commissions' guidelines, including suspensions of permits for up to three years, revocation of a permit, and fines of up to $5,000. *See* NCGS § 18B-104(a).

At issue in this case is the ABC Commission's duty, pursuant to regulation, to determine whether an advertisement or product label on any alcoholic beverage sold or distributed in North Carolina is appropriate. *See* 14B NCAC 15B.1003. That regulation operates as an unlawful prior restraint because it provides, in pertinent part: "An advertisement or product label on any alcoholic product sold or distributed in this State shall not contain any statement, design, device, or representation that depicts the use of alcoholic beverages in a scene that is determined by the Commission to be **undignified, immodest, or in bad taste**." *See* 14B NCAC 15B.1003(a)(2) (emphasis added). Therefore, there is a prior restraint before anyone can engage in this kind of commercial speech in the state, and that prior restraint is only lifted once the government decides that the label meets its level of "dignity," "modesty," or "good taste."

The regulation is, on its face, in constitutional "bad taste," as it is in clear violation of the First Amendment to the United States Constitution. To the extent that Defendants would even be able to argue that the regulation is not facially unconstitutional, Defendants' application of the regulation against Plaintiff demonstrates beyond a shadow of a doubt that it flies in the face of clear First Amendment jurisprudence.

**2.3  The Present Dispute**

On or about July 16, 2021, Flying Dog Brewery sent various samples of beer labels and keg collars to the ABC Commission. (*See* North Carolina Label/Product Application, attached as

**Exhibit 3**.) Among the labels and keg collars submitted was the aforementioned label for Freezin' Season Winter Ale. (*See* Caruso Decl. at ¶ 19.) On July 23, 2021, Cindy Mesino, an ABC Commission employee, sent an email to Flying Dog Brewery, informing it that the ABC Commission, and the individual commissioner Defendants named herein, did not approve the label for the twelve ounce Freezin' Season bottle. (*See* July 23, 2021 Email from Defendants to Plaintiff, attached as **Exhibit 4**.) When Flying Dog Brewery asked why the label was not approved, Ms. Mesino cited the regulation, highlighting "bad taste" in yellow. (*See id.*) She acknowledged that the aforementioned regulation caused the commissioners to reject the label and stated "[a]s you can see the image below is seen as inappropriate to many here." (*See id.*)

Flying Dog Brewery would advertise and make commitments to sell Freezin' Season in North Carolina, but refrains from doing so because it reasonably fears that doing so would damage its ability to sell its other present and future beers in North Carolina. Flying Dog Brewery's inability to advertise and commit to sell Freezin' Season in North Carolina has damaged Flying Dog Brewery by unlawfully depriving it of its right to free expression and costing it significant sales of Freezin' Season beer and ancillary Freezin' Season products, as well as generally damaging Flying Dog Brewery's goodwill in North Carolina and thus hurting the sales of Flying Dog Brewery's other beers and products that may legally be sold in North Carolina. (*See* Caruso Decl. at ¶ 22.)

While Freezin' Season does not release until October, Defendants' actions are currently injuring Flying Dog Brewery. (*See* Caruso Decl. at ¶ 23.) Flying Dog Brewery is taking orders for the beer and has currently received orders for the beer from every state in its distribution network, except for North Carolina. (*See id.* at ¶ 24.) If injunctive relief does not issue immediately, it will continue to be deprived of its Constitutional rights and to have its speech unlawfully stifled. Flying Dog Brewery will also lose its sales of Freezin' Season in North Carolina for the 2021 calendar year. (*See id.* at ¶ 25.) Flying Dog Brewery must have completed its orders for Freezin' Season Winter Ale within approximately 10 days so that it might commence production of the beer. (*See id.* at ¶ 26.)

Defendants' actions have caused more damage to Flying Dog Brewery than just deprivation of its Constitutional rights and lost sales for 2021. If Flying Dog Brewery cannot sell Freezin' Season

in North Carolina in 2021, it risks losing hard-won shelf placements for all of its seasonal offerings. (*See* Caruso Decl. at ¶ 28.) Seasonal beers rotate through liquor stores. (*See id.* at ¶ 27.) If Flying Dog Brewery does not have a winter ale offering to follow its summer and fall seasonals, retailers will put another, non-Flying Dog Brewery beer in its place. (*See id.* at ¶ 27.) If that happens, it is likely that Flying Dog Brewery will not get that shelf space back for its subsequent seasonal offerings. (*See id.* at ¶ 28.) Further, its expressive content will never be able to reach this years' customers affixed to its product.

Finally, Defendants may argue that they have permitted sales of Freezin' Season on draft. However, that does not change that prohibition of sales of bottles is infringing upon Flying Dog Brewery's First Amendment rights, the deprivation of which always constitutes irreparable harm. For the product is far more than the mere liquid – but the artistic and social expression that Flying Dog Brewery provides with its beer, when sold in bottle form. Moreover, bottle sales make up more than 90% of Flying Dog Brewery's business. (*See* Caruso Decl. at ¶ 29.) Flying Dog Brewery's sales velocity is almost entirely dependent upon its brand presence and availability in retail outlets. (*See id.* at ¶ 30.)

Given that Flying Dog Brewery relies so heavily upon retail sales, the design of its labels is particularly important to entice customers into buying its beer and to express its corporate speech to its customers and potential customers alike. (*See* Caruso Decl. at ¶ 31.) Flying Dog Brewery designs those labels for approval by federal and state authorities in order to ensure that it can meet its commitments to its distributors and to ensure that its beers are on retail shelves throughout its distribution area. (*See id.* at ¶ 32.) Currently, the label for Freezin' Season Winter Ale has received a Certificate of Label Approval from the Alcohol and Tobacco Tax and Trade Bureau, which is part of the U.S. Department of the Treasury, and approval from every state within its distribution network with one exception: North Carolina. (*See id.* at ¶ 33.) If Defendants' deprivation of Flying Dog Brewery's First Amendment rights is permitted to stand, it will irreparably damage the goodwill that the brewery has built with its distribution partners and chain retail buyers in the State of North Carolina. (*See id.* at ¶ 34.)

Plaintiff respectfully requests that the Motion be granted. Temporary and preliminary injunctive relief should issue, permitting Plaintiff to sell its Freezin' Season Winter Ale in bottles in the State of North Carolina.

**3.0   LEGAL ARGUMENT**

**3.1   Standard of Review**

Rule 65 of the Federal Rules of Civil Procedure provides for temporary restraining orders and preliminary injunctions in federal courts upon notice to the adverse party. *See* Fed. R. Civ. P. 65(a) and (b). A temporary restraining order or preliminary injunction must (1) state the reasons why it issued; (2) state its specific terms; and (3) describe in reasonable detail the act or acts restrained or required. Fed. R. Civ. P. 65(d). The principal function of a temporary restraining order or preliminary injunction is to maintain the status quo. *See Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013). However, injunctive relief can also be used to restore, rather than merely preserve the status quo, even when the nonmoving party has disturbed it. *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012).

The Supreme Court of the United States articulated a four-part standard for issuance of injunctive relief: (1) that plaintiff is likely to succeed on the merits; (2) that plaintiff is likely to suffer irreparable harm if the injunction did not issue; (3) that the balance of equities tipped in plaintiff's favor; and (4) the injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

**3.2   Flying Dog Brewery is likely to succeed on the merits.**

Defendants rejected Plaintiff's label for its Freezin' Season Winter Ale under a regulation that gives them the power to censor any beer label they find in "bad taste" or believe to be "inappropriate." Defendants' position "offends a bedrock First Amendment principle: **Speech may not be banned on the ground that it expresses ideas that offend**." *Tam*, 137 S. Ct. at 1751 (emphasis added).

Flying Dog Brewery's labels have expressive components with detailed and humorous artwork that is not limited solely to promoting its products. The Supreme Court in *Tam* did not decide the question of whether trademarks, i.e., speech comparable to the artwork on beer labels, is commercial speech or expressive speech entitled to full First Amendment protections. *Tam*, 137 S. Ct. at 1764. However, Defendants' regulations are unconstitutional even if Flying Dog Brewery's labels are

- 9 -
Motion for Temporary Restraining Order and Preliminary Injunction
Case 5:21-cv-00343-BO   Document 5   Filed 08/26/21   Page 9 of 17

commercial speech, which is "expression solely related to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 561 (1980). The First Amendment, as applied to individual states through the Fourteenth Amendment, protects "commercial speech from unwanted governmental regulation." *Id.* (*citing Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 761-62(1976)); *see also Davenport v. Alexandria*, 710 F.2d 148, 148 n.1 (4th Cir. 1983). The expression of commercial speech "not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information." *Cent. Hudson*, 447 U.S. at 561-62.

The government does not have the "complete power to suppress or regulate commercial speech." *Id.* at 562. The protection available to commercial speech "turns on the nature both of the expression and of the governmental interests served by its regulation." *Id.* at 563. In order to regulate commercial speech that is "neither misleading nor related to unlawful activity," the "State must assert a substantial interest to be achieved by restrictions on commercial speech." *Id.* at 564. The "regulatory technique must be in proportion to that interest," and the "limitation on expression must be carefully designed to achieve the state's goal." *Id.*

In other words, to survive, a restriction on commercial speech must serve a "substantial interest," and it must be "narrowly drawn." *Matal*, 137 S. Ct. at 1764. Among other things, this means that the "regulatory technique may only extend as far as the interest it serves." *Id.* (*quoting Cent. Hudson*, 447 U.S. at 565.) And it is no solution to state that Flying Dog can just change its label or not have the privilege of selling beer in this state – as this violates the doctrine of unconstitutional conditions. *See In re Tam*, 808 F.3d 1321, 1349 (Fed. Cir. 2015).

In this instance, the regulation at issue permits the ABC Commission to reject commercial speech that it determines is undignified, immodest, or in bad taste. *See* 14B NCAC 15B.1003(a)(2) (emphasis added). In rejecting Flying Dog Brewery's label, Defendants' representative specifically stated that Defendants found the label "in bad taste" and "inappropriate." Thus, the point of the regulation could not be more clear: The ABC Commission and its Defendant members claim to have a substantial "interest in preventing speech expressing ideas that offend." *Matal*, 137 S. Ct. at 1764.

Setting aside whether Plaintiff's label is explicit, which it is not, the regulation facially discriminates against speech that some[7] may find distasteful, which "strikes at the heart of the First Amendment." *Id.* Regulations, such as the one enforced by Defendants at issue in this case conflict with the "proudest boast of our free speech jurisprudence": that the First Amendment to the United States Constitution "protect[s] the freedom to express 'the thought that we hate.'" *Id.* (*quoting U.S. v. Schwimmer*, 279 U.S. 644, 655 (Holmes, J., dissenting).

Defendants' bar on labels that are "inappropriate" or "in bad taste" are impermissible viewpoint-based restrictions on speech. A restriction on speech is content-based when it either seeks to restrict, or on its face restricts, a particular subject matter. *See Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995). Any restriction on speech based on the message conveyed is presumptively unconstitutional. *See Turner Broadcasting System, Inc., v. FCC*, 512 U.S. 622, 641-43 (1994). This presumption becomes stronger when a government restriction is based not just on subject matter, but on a particular viewpoint expressed about that subject. *See R.A.V. v. St. Paul*, 505 U.S. 377, 391 (1992). The government cannot be allowed to impose restrictions on speech where the rationale for the restriction is the opinion or viewpoint of the speaker. *See Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46 (1983).

Defendants' restrictions here are virtually indistinguishable from the Lanham Act's prior bars on registrability of "disparaging" and "immoral or scandalous" trademarks. The U.S. Supreme Court has found that both of these categories of restrictions are unconstitutional viewpoint-based restrictions on speech, whether commercial or purely expressive. *See Tam*, 137 S. Ct. at 1763 (in finding "disparagement" bar unconstitutional, noting that "in the sense relevant here, that is viewpoint discrimination: Giving offense is a viewpoint"); *see also Iancu v. Brunetti*, 139 S. Ct. 2294, 2299-2301 (2019) (in finding "immoral or scandalous" bar unconstitutional, noting that these terms were interpreted to mean "shocking," "offensive," and "disreputable," and thus constituted viewpoint-

---

[7] Specifically, "some" in this instance refers to the four members of the ABC Commission.

based discrimination). There is no daylight between Defendants' restrictions and what the Supreme Court has already found unconstitutional. On their face, these restrictions are viewpoint-based.

Defendants cannot have a substantial interest in regulating commercial speech that they believe is "in bad taste" or "inappropriate." The First Amendment explicitly protects such speech. The regulation at issue here is unconstitutional. It cannot stand. However, in the meantime, as this case progresses, Defendants must not be permitted to prohibit Flying Dog Brewery from advertising, marketing and selling Freezin' Season with the label it submitted. Injunctive relief must issue.

Moreover, even if Defendants could show that the regulation furthers a substantial government interest, which it does not, the regulation is not "narrowly tailored" to further that interest. According to the ABC Commission's regulations, their purpose is to "provide regulation and control of the manufacture, distribution, advertisement, sale, possession and consumption of alcoholic beverages to serve the public health, safety and welfare." 14B NCAC 15A.0101.

The regulation does not define what it means by "undignified, immodest, or in bad taste." *See* 14B NCAC 15B.1003(a)(2). It leaves that determination to the subjective whims of the ABC Commission and its members. As written, the regulation at issue cannot be narrowly tailored to serve a compelling government interest because it is specifically drafted in violation of a bedrock principle of First Amendment jurisprudence, namely that speech cannot be prohibited because it expresses ideas that offend.

The regulation is not designed to be narrowly tailored. Instead, it prohibits anything that some or all of the members of the ABC Commission find distasteful. Prohibiting speech for being distasteful already runs afoul of First Amendment principles. However, the regulation in question here depends upon what the individual members of the ABC Commission find distasteful or inappropriate. In other words, the exact same Freezin' Season Winter Ale label that Defendants found inappropriate in 2021 might be found wholly appropriate and approved if the ABC Commission has new members in the future.

As written, the regulation is almost unfathomably broad. Given that dogs cannot consume alcohol, the ABC Commission could ultimately find that using canines to advertise intoxicating

beverages is distasteful and ban all of Flying Dog Brewery's labels as being in bad taste. If two or more ABC Commission members are religious and believe that alcohol advertisements using images of demons is inappropriate, they could reject every single label and advertisement submitted to them by Stone Brewing. (*See* Stone Brewing Beers, <perma.cc/X5NC-GZ8D>, attached as **Exhibit 5**.) The regulation is unconstitutional, necessitating the issuance of preliminary injunctive relief.

Defendants may make the cynical argument that they are not stifling Flying Dog Brewery's First Amendment rights because it is free to distribute its labeling, just not on beer bottles sold in North Carolina. However, under the unconstitutional conditions doctrine, the government may not condition the availability of a government benefit on an individual's agreement to surrender a constitutional right. *See Home Ins. Co. of New York v. Morse*, 87 U.S. 445, 451 (1871); *Doyle v. Continental Ins. Co.*, 94 U.S. 535, 543 (1876); *Rumsfeld v. Forum for Academic & Institutional Rights*, 547 U.S. 47 (2006); *In re Tam*, 808 F.3d at 1349. A brewery may only enjoy the benefit of advertising beer in North Carolina if it limits its First Amendment rights to include only speech that the ABC Commission, in its own subjective judgment, determines not to be "inappropriate" or "in bad taste." Flying Dog Brewery's First Amendment rights are stifled by Defendants' actions, and it is likely to prevail on its claims.

### 3.3 Flying Dog Brewery has been irreparably injured.

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). When a plaintiff seeks injunctive relief for "an alleged violation of First Amendment rights, a plaintiff's irreparable harm is inseparably linked to the likelihood of success on the merits of plaintiff's First Amendment claim." *WV Ass'n of Club Owners and Fraternal Srvs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). Thus, if the plaintiff can show a likelihood of success on the merits of its First Amendment claim for relief, injunctive relief must issue.

In this case, Defendants deprived Flying Dog Brewery of its First Amendment rights on July 23, 2021. On that date, Defendants informed Flying Dog Brewery that it would not be permitted to use its label for the Freezin' Season bottle. When Plaintiff asked why its Freezin' Season label was

rejected, Defendants' representative responded that Defendants believed it was in bad taste and wrote "[a]s you can see the image below is seen as inappropriate to many here."

Defendants' subjective determination that the label was in bad taste constitutes a deprivation of Flying Dog Brewery's First Amendment rights. Plaintiff Flying Dog Brewery respectfully requests that the Court issue injunctive relief to restore the status quo that existed before Defendants rejected the Freezin' Season label. This Motion must be granted.

Moreover, Plaintiff Flying Dog Brewery will additionally be irreparably injured due to the immediate loss of goodwill with its distribution partners and chain retail buyers. If Flying Dog Brewery does not have a winter seasonal release on retail shelves, it will lose shelf space in North Carolina retail stores and likely will not get that shelf space back. Defendants are not only unlawfully depriving Flying Dog Brewery of its freedom of expression, they are permanently affecting its ability to do business in the State of North Carolina. Flying Dog Brewery is entitled to immediate injunctive relief.

### 3.4 The balance of equities tips in Plaintiff's favor.

When balancing equities, courts must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding" of injunctive relief. *Winter*, 555 U.S. at 24. In other words, the Court must determine whether the harms faced by the plaintiff in the absence of an injunction outweigh the potential harm to the defendant if the injunction is issued. *See Mt. Valley Pipeline, LLC v. Western Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019).

Here, the balance of equities tips in Flying Dog Brewery's favor. Failing to grant the requested injunction will continue to deprive Flying Dog Brewery of its free speech rights pursuant to the First Amendment of the United States Constitution. Meanwhile, Defendants will suffer no harm if Flying Dog Brewery is granted the requested injunctive relief. Rather, an injunction will merely restore the rights guaranteed by the U.S. Constitution. A temporary restraining order, to be converted into a preliminary injunction, must issue.

### 3.5 Injunctive relief is in the public interest.

Finally, injunctive relief is in the public interest. Generally, the public interest "favors protecting First Amendment rights." *Kelly v. City of Parkersburg*, 978 F. Supp. 2d 624, (S.D. W.V. 2013); *see also Carey v. FEC*, 791 F. Supp. 2d 121, 135-36 (D. D.C. 2011); *Mullin v. Sussex Cnty., Del.*, 861 F. Supp. 2d 411, 428 (D. Del. 2012). Moreover, the unconstitutional regulation being enforced by Defendants in this case has the potential to harm nonparties to the case because it will limit or infringe upon the rights granted to them by the First Amendment of the United States Constitution as well. *See Wolfe Fin. Inc. v. Rodgeres*, 2018 U.S. Dist. LEXIS 64335, at *49 (M.D. N.C. April 17, 2018) (*citing McCarthy v. Fuller*, 810 F.3d 456, 461 (7th Cir. 2015).

Plaintiff has shown that its First Amendment rights are being infringed and that the public interest favors protecting those rights. Moreover, because the unconstitutional regulation in question has unquestionably deprived third parties to this case of their Constitutional rights in the past, the public interest clearly favors the issuance of the injunctive relief requested by Flying Dog Brewery.

### 3.6 At most, a minimal bond should be required.

Rule 65 of the Federal Rules of Civil Procedures provides that a court cannot enter injunctive relief unless the moving party "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). In other words, a bond should only be required if the enjoined party will suffer any harm from the issuance of the injunction. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 285 (4th Cir. 2002).

Defendants will suffer no damages if the Court issues the requested injunction, which will simply allow Flying Dog Brewery to advertise and sell its Freezin' Season beer with the label that has been approved by 20 other states and the District of Columbia in Flying Dog Brewery's distribution network. (*See* Caruso Decl. at ¶ 35.) All that the injunction will do is repair the status quo and allow Plaintiff to exercise its First Amendment rights. For this reason, Flying Dog Brewery requests that the injunction issue with no bond required. If a bond is required, Flying Dog Brewery requests that it be minimal and no more than $500.00.

**4.0 CONCLUSION**

For each and every reason referenced in this Motion, Plaintiff Flying Dog Brewery respectfully requests that this Court issue a temporary restraining order, to be converted into a preliminary injunction, enjoining Defendants from prohibiting Plaintiff from marketing, selling, and distributing its Freezin' Season Winter Ale in the State of North Carolina due to the label that a majority of the ABC Commission finds distasteful. As shown above, Plaintiff is likely to win on the merits and is being irreparably injured. The balance of equities tips in Plaintiff's favor, and an injunction is in the public interest. Because Defendants will not be injured by the issuance of injunctive relief, a bond should not be required. However, if a bond is required, it should be minimal.

Dated: August 26, 2021.	Respectfully Submitted,

/s/ T. Greg Doucette
T. Greg Doucette (NC Bar No. 44351)
THE LAW OFFICES OF T. GREG DOUCETTE, PLLC
311 E Main Street
Durham, North Carolina 27701
Tel: (919) 998-6993
Email: greg@tgdlaw.com

W. Michael Boyer
CAROLINA CRAFT LEGAL
6502 Birkdale Drive
Greensboro, North Carolina 27410
Tel: (336) 944-2132
Email: michael@carolinacraftlegal.com

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
Email: ecf@randazza.com

Attorneys for Plaintiff
Flying Dog Brewery, LLC

# CERTIFICATE OF SERVICE

The undersigned has this date served the foregoing **PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION** upon the Defendants as follows:

**To:**   North Carolina Alcoholic Beverage Control Commission
c/o K. Renee Metz, Process Agent
400 E. Tryon Road
Raleigh, NC  27610
**Service by:**   CM/ECF pursuant to E.D.N.C. Local R. 5.1
(Also served with Summons and Complaint)

This the  26th  day of                         August                      , 2021.

THE LAW OFFICES OF T. GREG DOUCETTE PLLC


/s/ T. Greg Doucette
T. Greg Doucette
North Carolina Bar No. 44351

LOCAL COUNSEL FOR PLAINTIFF
311 E. Main Street
Durham, North Carolina  27701-3717
Phone: (919) 998-6993
Fax:  (866) 794-7517
Email: greg@tgdlaw.com